United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIBABA.COM HONG KONG LIMITED, a Hong Kong corporation, and ALIBABA.COM, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>P.S. PRODUCTS, INC., an Arkansas corporation, and BILLY PENNINGTON, an individual,<br><br>Defendants. | No. C 10-04457 WHA<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND AMEND CASE MANAGEMENT ORDER** |

**INTRODUCTION**

In this design-patent infringement action, plaintiffs move for leave to file a second amended complaint and amend the case management order. For the reasons stated below, the motion is **DENIED**.

**STATEMENT**

Plaintiffs are Alibaba.com Hong Kong Ltd., a Hong Kong corporation, and Alibaba.com, Inc., a Delaware corporation. Plaintiffs provide web platforms that enable buyers and suppliers to conduct online business. Plaintiffs do not manufacture, own, control, or take possession of any of the products listed for sale on their websites. Defendants are P.S. Products, Inc., an Arkansas corporation, and Billy Pennington, inventor of the design patents at issue and president

of P.S. Products, Inc. Defendants own United States Design Patents Nos. D561,294, D576,246, and D611,115. All three patents relate to the design of various models of stun guns (First Amd. Compl. ¶¶ 1–29).

On January 14, 2010, plaintiffs received a cease-and-desist letter from defendants, which stated that plaintiffs were infringing defendants' patents. Shortly thereafter, plaintiffs responded to the letter, and stated that plaintiffs were a "'neutral business-to-business platform connecting buyers and suppliers for exchanging information' and that [they were] not the seller, distributor or the representative of the seller or distributor of any of the products displayed in the Accused Websites." In addition, plaintiffs supplied a copy of their Intellectual Property Rights Policy and a form with which defendants could report any claimed violations. Defendants acknowledged receipt of plaintiffs' letter and form but expressly declined to fill out the requested form. Five days later, plaintiffs informed defendants that the identified infringing listings would shortly be removed (*id*. at ¶¶ 11–15).

On August 13, 2010, defendants filed a patent infringement suit against plaintiffs in the Eastern District of Arkansas. On October 1, 2010, plaintiffs filed the instant action seeking declaratory relief for non-infringement. The Court stayed this action pending the outcome of the Arkansas action, which was subsequently dismissed (Dkt. No. 35). On March 15, 2011, the stay was lifted, and both parties were instructed to proceed (Dkt. No. 37). The case management order set June 30, 2011, as the deadline to make pleading amendments. Fact discovery was to be completed by March 30, 2012 (Dkt. No. 43 ¶¶ 2–4). On December 15, 2011, plaintiffs deposed defendant Inventor Pennington. During that deposition, Inventor Pennington was questioned on issues relating to the design of the '246 and '294 patents. Based on that deposition testimony, plaintiffs now contend that the '246 and '294 patent designs were "motivated primarily by considerations of functionality" and the patents are therefore invalid due to their failure to meet the conditions of patentability under 35 U.S.C. 171. For these reasons, plaintiffs now move for leave to file a second amended complaint and amend the case management order. Plaintiffs seek to add claims for invalidity and modify the date by which all pleading amendments must have been made. This order follows full briefing and a hearing.

## ANALYSIS

"In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave [to amend] should, as [Rule 15(a)] require[s], be 'freely given.'" *Forman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15(a), however, does not apply when a district court has established a deadline for amended pleadings under Rule 16(b). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Once a scheduling order has been entered, the liberal policy favoring amendments no longer applies. Subsequent amendments are not allowed without a request to first modify the scheduling order. *Id.* at 608–09. At that point, any modification must be based on a showing of good cause. Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. Modification of the pretrial schedule would be merited if the deadline could not be met "despite the diligence of the party seeking the extension." *Id.* at 609 (citation omitted).

Plaintiffs have made no such showing. Under the case management order in effect in this case, "[l]eave to add any new parties or pleading amendments must [have been] sought by **JUNE 30, 2011**" (Dkt. No. 43 ¶ 2) (emphasis in original). Plaintiffs assert that they were unable to file their invalidity defense with their first amended complaint because they were not aware of the potentially invalidating information. Plaintiffs, however, have long been on notice that the deadline for seeking leave to amend their complaint was more than eight months ago.

Plaintiffs make much of the fact that if this Court were to grant the instant motion, no additional discovery would be required because Inventor Pennington, as the sole inventor, holds all the information in regard to the patents' potential invalidity due to functionality as the primary motivation for the designs at issue. Yet, given the admitted importance of Inventor Pennington's knowledge, plaintiffs have made no excuse for delaying to depose him. Plaintiffs have not, for example, made an accusation that defendants engaged in dilatory tactics in postponing the deposition. Attorneys should be granted leeway in deciding what tactics they

3

1  choose to exercise during litigation; but, as mentioned, this is not a case where plaintiffs were
2  unable to depose Inventor Pennington within a reasonable time after discovery began.  If counsel
3  made the decision to wait, they should bear the consequences of that decision.  Absent some
4  good-faith excuse for such action, a motion to add new defenses brought nine months after
5  discovery began, seven months after the time to amend expired, and only two months before fact
6  discovery ends, can hardly be the result of due diligence.

7  Furthermore, even if this order were to conclude otherwise as to plaintiffs' diligence, the
8  potential for undue prejudice and issues of undue delay cannot be ignored.

9  **1. UNDUE PREJUDICE.**

10  The crucial factor when considering leave to amend outside of the Rule 16 context is
11  undue prejudice.  *U.S. v. Pend Oreille Public Utility Dist. No. 1*, 926 F.2d 1502, 1511 (9th Cir.
12  1991).  Defendants argue that adding a new claim for invalidity will completely change the
13  nature of a non-infringement case, and will unduly prejudice defendants (Opp. 5).  Defendants
14  rightfully point out that allowing plaintiffs' amendment is likely to require additional discovery,
15  extension of deadlines (both for motions and answers in response to the new claims), and claim
16  construction — all of which will result in pushing back trial.  At the hearing, defendants
17  confirmed their intention to pursue responsive pleadings and motions, seek claim construction,
18  and engage an expert, in response to plaintiffs' amendment if it were allowed.  Defendants are
19  within their rights to do so, regardless of whether plaintiffs believe this to be unnecessary.
20  While it is true that the parties had stipulated that claim construction would not be required, that
21  was prior to the instant motion.  Plaintiffs argue this Court is under no duty to engage in claim
22  construction for design patents (Reply 3).  However, this is in clear contradiction to the law.
23  "[C]ourts have a duty to conduct claim construction in design patent cases" even though "the
24  preferable course ordinarily will be for a district court not to attempt to 'construe' a design
25  patent claim by providing a detailed verbal description of the claimed design."  *Egyptian
26  Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008).  Claim construction is still
27  necessary, irrespective of form.  *Ibid.*

28

Even so, plaintiffs still argue, both in their response and at the hearing, that claim construction and amendment of the case management schedule (aside from allowing leave to amend), would not be necessary (Reply 2–4).  At this stage, plaintiffs' entire claim for invalidity would be premised on a few lines in Inventor Pennington's deposition.  Without deciding the merits of plaintiffs' claim, it is indisputable that the contention is still in its infancy and would require further investigation and probably discovery, the extent of which is unknown.  Where, as here, "[t]he new claims would have required additional research and rewriting of trial briefs[, t]he resulting delay and expense would have prejudiced [] defendants, who were entitled to rely on a timely close of discovery and a near-term trial date." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988).

### 2. UNDUE DELAY.

Much of the discussion above in regard to plaintiffs' failure to show good cause as required by Rule 16(b) can be applied equally to the undue delay standard under traditional Rule 15 analysis.  Based on those reasons, this factor clearly weighs in favor of defendants.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion to file a second amended complaint and amend the case management order is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 19, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5