**CHRIS H. STEWART** (Ark. Bar No. 03-222)
arklaw@comcast.net
*Admission Pro Hac Vice*
**STEWART LAW FIRM**
904 Garland Street
Little Rock, AR 72201
Telephone: (501) 353-1364
Facsimile: (501) 353-1263

**DAVID R. OWENS,** State Bar No. 180829
dowens@owenstarabichi.com
**BRUNO W. TARABICHI,** State Bar No. 215129
btarabichi@owenstarabichi.com
**OWENS TARABICHI LLP**
111. N. Market St., Suite 730
San Jose, California 95113
Telephone:    408.298.8200
Facsimile:    408.521.2203

Attorneys for Defendants
P.S. Products, Inc. and Billy Pennington

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANSICO DIVISION

| | |
|---|---|
| ALIBABA.COM HONG KONG LIMITED, a Hong Kong Corporation and ALIABABA.COM, INC., a Delaware corporation | CASE NO. CV-3:10-04457 WHA |
| Plaintiffs, | |
| v. | |
| P.S. PRODUCTS, INC., an Arkansas corporation, and BILLY PENNINGTON, an individual, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | Date:         May 10, 2012<br>Time:         2:00 p.m.<br>Courtroom:  8, 19th Floor<br>Judge:        Hon. William H. Alsup |

1

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................6

II.     FACTS NOT DISPUTED BY THE DEFENDANTS ............................................7

III.    FACTS APPLICABLE TO INFRINGEMENT....................................................9

IV.     LEGAL STANDARD ................................................................................18

V.      DIRECT INFRINGEMENT ........................................................................19

        A.      Plaintiffs Control "*Offers for Sell*" Listed on Its Websites......................22

                i.      Alibaba.com, Inc., is Controlled by Alibaba Hong Kong
                        Limited..............................................................................24

        B.      Plaintiffs Received Notice of the Defendants Patents and
                Continued to list "*Offers for Sell*" on Its Websites ....................................25

        C.      Plaintiffs Are Paid a 3.09% Commission on Each "*Sell*" on Its
                Website www.aliexpress.com ..............................................................26

VI.     INDUCED INFRINGEMENT.......................................................................28

        A.      Circumstantial Evidence of Induced Infringement is Sufficient to
                Prove Genuine Issues of Material Fact to Survive a Motion for
                Summary Judgment ...........................................................................28

        B.      Circumstantial Evidence is Appropriate to Support Defendants'
                Broad Theory of Member Class Induced Infringement by the
                Plaintiffs..........................................................................................32

        C.      *Hewlett-Packard*, *Napster*, and *MGM*, Cases Support Plaintiffs'
                Liability of Induced Infringement............................................................35

        D.      Doctrine of Willful Blindness Implicates Plaintiffs of Induced
                Infringement.....................................................................................37

V.      CONCLUSION......................................................................................39

# TABLE OF CASES

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986) ................................................................18,19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .........18,19

*Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994)..........................19

*Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S. Ct. 2419,
115 L. Ed. 2d 447 (1991) ................................................................19

*Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000)....................................20,21,27

*3d Systems, Inc., v. Aarontech Laboratories, Inc., et al.*, 160 F.3d 1373;
1998 U.S. App. LEXIS 28583; 48 U.S.P.Q.2D (BNA) 1773 ......................................20

*Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 16 USPQ2d 1587
(Fed. Cir. 1990) ................................................................28

*VLT Corp. v. Unitrode Corp.*, 130 F.Supp.2d 178, 200-201 (D. Mass. 2001) ............................28

*Sims v. Western Steel Co.*, 551 F.2d 811, 817 (10th Cir. 1977)....................................29

*Moleculon Research Corp. v. CBS, Inc.*, 793 F2d 1261, 229 USPQ 805 (Fed Cir 1986).......29,33

*Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 5 L. Ed. 2d 20, 81 S. Ct. 6 (1960)........29

*Hilgrave, Inc. v. Symantec Corp.*, 272 F. Supp.2d 613 (E.D. Mich. 2003) ............................29,30

*Water Technologies Corp., Supra v. Calco, Ltd., Supra*, 850 F.2d 660,
1988 U.S. App. LEXIS 8175 (1988)................................................................29

*Insituform Technologies, Inc., v. CAT Contracting, Inc.*, 161 F.3d 688, 48 USPQ2d
(BNA) 1610 (1998) ................................................................29

*Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 137 USPQ 84 (5th Cir. 1963) ............................30

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 1 Fed. Appx. 879
(Fed. Cir. 2001)................................................................30

*Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171 (S.D.N.Y. 1999) ............................31

*Hauni Werke Koerber & Co. v. Monlins*, Ltd. 183 USPQ 168 (E.D. Va. 1974)..........................31

*Semiconductor Energy Laboratory Company LTD. v. Chi Mei Optoelectonics Corp.*,
et al., 531 F. Supp. 2d 1084; 2007 U.S. Dist. LEXIS 44288 ...........................................32,33,35,36

*Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1378 (Fed. Cir. 2004)............32

*Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1065-66 (N.D. Cal. 2006)...........33

*Hewlett-Packard Co., v. Bausch & Lomb, Inc.*, 909 F.2d 1464,
15 USPQ2d (BNA) 1525 (1990)........................................................................................36

*A & M Records, Inc., v. Napster, Inc.*, 239 F.3d 1004, (9th Cir. 2001).........................................36

*MGM v. Grokster*, 545 U.S. 913, 125 S. Ct. 2764 (2005) ........................................................36,37

*Global-Tech Appliances, Inc., Et Al., v. SEB S.A.*, 131 S. Ct. 2060,
98 U.S.P.Q2D 1665 (2011)..............................................................................................37,38

*SEB S.A. v. Montgomery Ward & Co.*, 137 F. Supp. 2d 285 (S.D.N.Y. 2001) ............................38

**FEDERAL STATUTES**

35 U.S.C. § 271 (a) ...............................................................................................................19,20,31

35 U.S.C. § 271(b) ........................................................................................................28,29,31,33,36,37

**STATE STATUTES**

California Uniform Commercial Code § 2105 ........................................................................21

California Uniform Commercial Code § 2106 ........................................................................21

California Uniform Commercial Code § 2206 ........................................................................21

California Uniform Commercial Code § 2204 ........................................................................22

**FEDERAL RULES**

Fed. R. Civ. P. 56(c) ..............................................................................................................18

Fed. R. Civ. P. 56(a) ..............................................................................................................19

Fed. R. Civ. P. 56(e) ..............................................................................................................19

**OTHER AUTHORITIES**

*4 Chisum on Patents*, (Matthew Bender) § 17.04 ...................................................................28,31

Patent Law Active Inducement of Infringement District Court Hold That Inducement Liability
Requires Proof of Intent to Induce Violation of the Law – *Amersham Pharmacia Biotech, Inc. v.
Perkin-Elmer Corp.*, No. C 97-04203 Crb, 2000 WI 1897300 (N.D. Cal. Dec. 22, 2000)
115 Harv. L. Rev. 1246, 1249 (2002) .........................................................................................31

Black's Law Dictionary, 7th Ed. ................................................................................................26

## I.      INTRODUCTION

On August 13, 2010 the Defendants, P.S. Products, Inc., and Billy Pennington filed suit against the Plaintiffs in the United States District Court for the Eastern District of Arkansas, styled, *P.S. Products, Inc., et. al. v. Alibaba.com, et. al.*, 4:10-CV-1149(JMM), for direct, indirect and contributory patent infringement.  That that case was dismissed upon motion for lack of personal jurisdiction over the Plaintiffs in Arkansas.  The clerk was ordered to close the case.

Before the Arkansas case was dismissed the Plaintiffs on October 1, 2010, filed a Complaint to seek Declaratory Judgment of Non-Infringement of the Defendants' patents, numbers, U.S. Patent Nos. D561,294 S, D576,246 S and D611,115 S, in the Northern District of California.  Please see **Dkt. No. 1**.  Subsequently, the Defendants filed Counterclaims alleging direct and induced patent infringement by the Plaintiffs.  Please see **Dkt. No. 41**

In their Counterclaims the Defendants allege that the Plaintiffs directly infringe on the Defendants' patents by placing in the stream of commerce products that embody the Defendants' patents.  Defendants allege that the Plaintiffs directly infringe on the Defendants' patents by "offering to sell" products that embody the Defendants' patents.  Defendants allege that the Plaintiffs directly infringe on the Defendants' patents by selling products that embody the Defendants' patents.  Furthermore, the Defendants' allege that the Plaintiffs induce third parties factories in the People's Republic of China to infringe on the Defendants' patents by selling third parties memberships on the Plaintiffs' websites to sell products that embody the Defendants' patents.  The Defendants allege that the Plaintiffs induce trade show attendees to infringe on the Defendants' patents by offering to sell products that embody the Defendants' patents at trade

shows. Additionally, the Defendants' allege the Plaintiffs profit from the illegal products being offer to sell and sold on the Alibaba websites.

## II.      FACTS NOT DISPUTED BY THE DEFENDANTS

Alibaba.com Hong Kong Limited ("Alibaba Hong Kong") is the operator of www.alibaba.com and www.aliexpress.com (collectively, the "Alibaba Websites").

The Alibaba Websites are registered to the same administrative contact of Timothy Alexander Steinert, Alibaba Group Holding Limited, Fourth Floor, One Capital Place P.O. Box 847, George Town Grand Cayman KY1-1103.

P.S. Products, Inc. is a self-defense supply company based in Little Rock, Arkansas owned by Billy Pennington.  P.S. Products, Inc. and Billy Pennington are collectively referred to as "P.S. Products."

Billy Pennington is the named inventor and owner of U.S. Patent Nos. D561,294 S ("the '294 patent"), D576,246 S ("the '246 patent"), and D611,115 S ("the '115 patent") (collectively, "the Patents-in-Suit").  Billy Pennington was deposed by the Plaintiffs on December 15, 2011 in Little Rock, Arkansas.

Alibaba Hong Kong allows intellectual property rights holders to submit complaints via email, fax, and mail.

Alibaba.com, Inc. provides marketing services in the United States for the Alibaba Websites.

Alibaba.com, Inc.'s marketing services consist of trade show exhibitions, event marketing, online display advertising, search engine marketing, affiliate marketing, social media marketing, cross promotional business partnership, and public relations.

In order to promote the Alibaba Websites, Alibaba.com, Inc. attends tradeshows

throughout the United States.  At these tradeshows, including the 2009 and 2010 ASD Tradeshows in Las Vegas, Alibaba.com, Inc. have computer terminals that allow visitors of the trade show to search the website themselves.

On or around January 14, 2010, P.S. Products sent a letter to Alibaba.com, Inc. accusing it of directly infringing the '294 and '246 patents.  The same letter gave Alibaba Hong Kong notice of the Defendants' patent by attaching copies of the '294 and '246 patents.  The letter did not mention the '115 patent.

On or about January 15, 2010, Alibaba Hong Kong responded "not a seller or distributor of any of the products or services listed on the website, nor [does it] represent a seller or buyer in specific transactions."  Alibaba Hong Kong also stated that "We need your assistance in identifying each and every products [sic] by their specific links as we are not experts of other parties' IP right and the products available in [sic] our website are extensive."

On or about January 15, 2010, P.S. Products drafted a response to Alibaba Hong Kong's January 15, 2010 letter.  P.S. Products attached screen shots of two products that they believed infringed the '294 and '246 patents.  Those products were the "knuckle stun gun" displayed by Yijia Import & Export Co., Ltd. and the "HW-008 stun gun" posted by Jingjiang City Heng Wei Protective Equipment Manufacturing Co., Ltd.  Alibaba.com, Inc. received the January 15, 2010 letter on January 19, 2010.

On January 19, 2010, Alibaba Hong Kong responded to the letter informing P.S. Products that Alibaba Hong Kong was processing the infringement claims for the two listings identified in P.S. Products' January 15, 2010 letter.

Cindy Chow is Senior Finance Director for Alibaba Hong Kong and was identified by the Plaintiff, Alibaba Hong Kong, in its Initial Disclosures to have knowledge of the operation of the

accused websites.  Cindy Chow was deposed by the Defendants in Hong Kong on October 6, 2011.

Elsa Wong is Senior Legal Director for Alibaba Hong Kong and was identified by the Plaintiff, Alibaba Hong Kong, in its Initial Disclosures to have knowledge of the Product Listing Policy and Take Down Policy.  Elsa Wong was deposed by the Defendants in Hong Kong on October 7, 2011.

Annie Xu is General Manager of Alibaba.com, Inc., and was identified by the Plaintiff, Alibaba.com, Inc., in its Initial Disclosures to have knowledge of the business operations Alibaba.com, Inc.  Annie Xu was deposed by the Defendants in Mountain View, California on November 4, 2011.

Daniel Draper is an Operations Specialist for Trust and Safety for Alibaba Hong Kong and was identified by the Plaintiff, Alibaba Hong Kong, in its Initial Disclosures to have knowledge of the policies and procedures with respect to prohibited products on the accused websites.  Daniel Draper was deposed by the Defendants in San Francisco, California on March 15, 2012.

Brian Kam Leng Tak is a member of the Sales Department of Alibaba Hong Kong and was identified by the Plaintiff, Alibaba Hong Kong, in its Initial Disclosures to have knowledge of the policies and procedures related to the sale of Alibaba.com memberships.  Brian Kam Leng Tak was deposed by the Defendants in San Francisco on March 15, 2012.

## III.     FACTS APPLICABLE TO INFRINGEMENT

The Defendants specialize in the manufacture and distribution of stun guns, stun devices, gun cleaning kits, and other personal protection devices. The Defendants market and sale its patented products through trade specialty shows, sales associates and through internet

distribution throughout the United States.   The Defendant, P.S. Products, Inc., is a small company with only twelve employees in Little Rock, Arkansas.  Please see Pennington Affidavit ¶  3-5.  The Defendant gross sales only amount to $5 million per year.

The Plaintiffs are internet sales providers of products via the World Wide Web, at www.alibaba.com and www.aliexpress.com, including but not limited, to personal protection devices including stun guns that embody the Defendants' patents.  The Plaintiffs own and operate the websites www.alibaba.com and www.aliexpress.com.   The Plaintiffs are a multimillion dollar company with affiliates all over the world and owned partly by Yahoo.com.

On February 5, 2008, United States Letters Patent No., US D561, 294 S, was issued to the Defendants for an invention for a Stun Gun.  The Defendants owed the patent No. US D561, 294 S throughout the period of the Plaintiffs infringing acts and still owns the patent.  On March 2, 2010, United States Letters Patent No. US D611,115 S, was issued to the Defendants for an invention for a Stun Gun Flash Light.  The Defendants owed the patent No. US D611,115 S throughout the period of the Plaintiffs infringing acts and still owns the patent US D611,115 S. Please see Pennington Affidavit ¶ 7.

The Defendants' products are one of a kind.  The Defendants' designs are its own intellectual property.  No goods of this design existed prior to the Defendants' designs and patents.  The Defendants are the only holder of patents on products of this kind in the United States.  The Blast Knuckle Stun Gun is the Defendants most sought after and sold product.  The Defendants makes most of its revenue off of the patented Blast Knuckle® stun gun than any other item it sells.  Please see Pennington Affidavit ¶ 8-10.  The Defendants have complied with the statutory requirement of placing a notice of the Letters of Patent on all Stun Guns and Stun Gun Flash Lights.

The Defendants were not aware that there were stun guns that embody the Defendants' patents on the Plaintiffs' websites until Defendants' customers notified them.   Please see Pennington Affidavit ¶ 13.   Some clients even cancelled orders and placed orders with vendors on the Plaintiffs' website.   Most shockingly, the photos used on the listing of the stun guns that embody the Defendants' patents on www.alibaba.com and www.aliexpress.com are the Defendants, Billy Pennington's hand.   Please see Pennington Affidavit ¶ 15.   The Plaintiffs list their California and Hong Kong addresses on its website.   Please see Pennington Affidavit ¶ 16. The Plaintiffs manage and control what products will and will not be listed on the website.

The Plaintiffs' websites promotes itself as the "global marketplace."   The Plaintiffs profit from its websites, as vendors must pay a fee to list their products. The Plaintiffs approve who may list products on its website and it chooses who may not be listed on their websites.

On January 11, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Knuckle Stun Gun.   This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Yijia Imports & Export Co., Ltd.   Please see **Exhibit D** to Pennington Affidavit..

On January 11, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled HW-008 stun gun.   This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Jingjiang City Heng Wei Protective Equipment Manufacturing Co., Ltd.   Please see **Exhibit E** to Pennington Affidavit.

On January 14, 2010 the Defendants' attorney sent the Plaintiffs a letter and copies of its patents advising them that they were placing in the stream of commerce stun guns that embody the Defendants' patented stun gun.   Thereby, placing the Plaintiffs on notice of the Patents-in-

suit.  Additionally, the Defendants provided the Plaintiffs copies of web screen shots whereby the stun guns that embody the Defendants' patents were being placed the stream of commerce.

On information and belief the Defendants learned that the Plaintiffs continue selling stun guns that embody the Defendants' patents.

On February 01, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Stun Master Knuckle Blaster.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was GLA Personal Protection Products. Please see **Exhibit H** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Best quality Flashlight Stun Gun.  This product infringes on patent No. D561,294 S. The third party Esino International Development Ltd. Please see **Exhibit I** to Pennington Affidavit.

On March 10, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Blast Knuckles supervoltage self-defense stun gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Jetch Industrial Co., Ltd. Please see **Exhibit J** to Pennington Affidavit.

On March 10, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled self defense device stun gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Shenzhen Fukang. Please see **Exhibit K** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Stun gun Knuckle Blaster.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Tom Green. Please see **Exhibit L** to Pennington Affidavit.

On August 18, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Blast Knuckles stun gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit M** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Knuckle Stun Gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit N** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Mini stun gun Blast Knuckles.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit O** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Mini electric shock stun gun with LED light.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit P** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Grip type/supervoltage self-defensive flashlight/electric shock LED torch/Stun gun/Electric baton.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was HK Huakai Technology Co., Ltd., Please see **Exhibit Q** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Super voltage Knuckle Stun Gun.  This product infringes on patent No. D561,294 S. The third

party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit R** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Wholesale mini stun gun 1.8 Million Volt.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit S** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Knuckle Stun Gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit T** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Shocking Knuckle Stun Gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit U** to Pennington Affidavit.

On August 18, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Knuckle Stun Gun 155.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit V** to Pennington Affidavit.

On August 18, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Knuckle Blaster Stun Gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit W** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Electric Shock Self Defense Device Stun Gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit X** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Blast Knuckle Stun Gun Electric Shocker Stun Baton.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit Y** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Flashing stick/electronic pocket stun gun/self-defense device.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Esino International Development Ltd. Please see **Exhibit Z** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Electric Shock Self Defense Device Stun Gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was 7daysget.com Ltd. Please see **Exhibit AA** to Pennington Affidavit.

On February 01, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Blast High Power Knuckle Stun Gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Leader Int'l Technology Co., Ltd. Please see **Exhibit BB** to Pennington Affidavit.

On August 18, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Blast Knuckles Flashlight Stun Guns.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Shenzhen Integrity Electronics Co. Ltd. Please see **Exhibit CC** to Pennington Affidavit.

On August 18, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Blast Knuckles Stun Gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Nick T. Please see Exhibit DD to Pennington Affidavit.

On September 13, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Stun gun Knuckle Blaster Mini Electric Baton.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Mr. Sam Smith. Please see **Exhibit EE** to Pennington Affidavit.

On August 27, 2010, the Defendants' offered to sell on www.aliexpress.com a product entitled Electric Shock Grasp Self Defense Device.   This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Guangzhou Zhi Cheng Industry Co. Ltd. Please see **Exhibit FF** to Pennington Affidavit.

On August 27, 2010, the Defendants' offered to sell on www.aliexpress.com a product entitled Self defense device electric shock flashlight Knuckles VT-400.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Spydigi Peng's Store. Please see **Exhibit GG** to Pennington Affidavit.

On September 07, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Knuckle Stun Gun.  This product infringes on patent No. D561,294 S. The third party

member listed as the manufacturer and member of the Defendants' websites was Security Icare Group Co., Ltd. Please see **Exhibit HH** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled 1600KV Grasp Self-defense Device.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Guangzhou Zhi Cheng Industry Co. Ltd. Please see **Exhibit II** to Pennington Affidavit.

On July 06, 2010, the Defendants' offered to sell on www.alibaba.com a product entitled Stun gun.  This product infringes on patent No. D561,294 S. The third party member listed as the manufacturer and member of the Defendants' websites was Equipment Manufacturing Co., Ltd. Please see **Exhibit JJ** to Pennington Affidavit.

As of April 19, 2011, the Plaintiffs have continued to sell the stun guns that embody the Defendants' patents on its websites www.alibaba.com and www.aliexpress.com.   The Plaintiffs have sold and continue to sell on their websites stun guns that embody the Defendants' patents and contributes to third parties selling stun guns that embody the Defendants' patents on its websites.

Absent the Plaintiff's websites the Defendants would not have been damaged nor would its patents been infringed upon by the third parties.  After receiving notice of the Defendants' patents the Plaintiffs continued to directly infringe on the Defendants' patent and induce third parties to list stun guns that embody the Defendants' patents on its websites.

In August of 2010 both parties attended the ASD trade show in Las Vegas, Nevada.  The Defendants purchased a booth offering its patented product for sale to buyers.  Please see Pennington Affidavit ¶ 63.  Alternatively, in the same venue the Plaintiffs purchased a booth and had the stun guns that embody the Defendants' patents for sale to the same buyers for a cheaper

price. Please see Pennington Affidavit ¶ 66.  The Plaintiffs stun guns that embody the Defendants' patents infringed on the Defendants' patents.  At the time of the ASD trade show the Plaintiffs had received notice that its stun guns that embody the Defendants' patents violated the Defendants' patents.  The Plaintiffs chose to ignore the Defendants notice because of the financial incentives it receives from its websites.

The Plaintiffs continue to induce persons and companies to infringe on the Defendants' patented products.  Additionally, after receiving notice of the Defendants' patents the Plaintiffs did not remove the infringing products from third-party factories product website pages on www.alibaba.com and/or www.aliexpress.com.

The Defendants have lost customers, reasonable royalties and profits due the stun guns that embody the Defendants' patents being placed in the stream of commerce by the Plaintiffs. The Plaintiffs prices for the stun guns that embody the Defendants' patents are significantly less than the Defendants' price.

## IV.     LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  On an issue for which the

opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving party's allegations. *Id.*; *Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994).  The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991); *Anderson*, 477 U.S. at 249.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).  Comes now the Defendants with the burden to prove to this court by affidavits and discovery that there are genuine issues of a material fact for a jury to decide.

## V.      DIRECT INFRINGEMENT

The Plaintiffs infringe on the Defendants' patents Nos. D561,294 S, and D611,115 S by making "offers to sell" and transacting "sells" on the accused websites of illegal products that embody the Defendants patents.  The relevant parts 35 U.S.C. § 271 states,

> "(a) Except as otherwise provided in this title [35 USCS §§ 1 et seq.], whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

In order for section 271(a) to apply to the Defendants' claims it must be determined if a genuine issue of material fact exists whether the Plaintiffs' conduct on its accused websites constitute an "offer to sell" and whether "sells" were transacted.

It is well established in patent cases the "offer to sell" language will be examined under the ordinary meaning of contract law. *Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000). The first case to analyze the "offer to sell" language under 271(a) was under the pretext of personal jurisdiction in *3d Systems, Inc., v. Aarontech Laboratories, Inc., et al.*, 160 F.3d 1373; 1998 U.S. App. LEXIS 28583; 48 U.S.P.Q.2D (BNA) 1773. In *3D* the court held that price quotations letters to California residents did constitute offers to sell. *Id.* at 1379. "If we were to permit potential infringers to avoid jurisdiction by denominating what otherwise would be an offer to sell merely by asserting the contrary in the offer, the prohibition added to § 271(a) against offers to sell would be hollow indeed. One of the purposes of adding "offer to sell" to § 271(a) was to prevent exactly the type of activity Aaroflex has engaged in, *i.e.*, generating interest in a potential infringing product to the commercial detriment of the rightful patentee." *Id.* at 1379.

In *Rotec* a Federal Circuit panel properly interpreted, "offer to sell" had its ordinary meaning in contract law. The court noted that "we must ultimately decide this issue as a matter of United States law." The panel discussed *3D Sys., Inc. v. Aarotech Labs., Inc.* (1998), the Federal Circuit's first decision addressing "offer for sale" under Section 271(a), the relation between "offer for sale" under Section 102(b), as defined by the Supreme Court and "offer to sell" under Section 271(a), both of which "invoke [a] traditional contractual analysis," which construed the meaning of "sale" under the Tariff Act of 1930. The court concluded that, given that, because Congress "elected not to provide an explicit definition of the phrase, "the meaning

of 'offer to sell' is to be interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of authority." *Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000).

To assist the analysis of whether the Plaintiffs' conduct on its accused websites constitute an "offer to sell" and whether "sells" were transacted the Court must examine California definitions of the formation of a contract for goods and what would constitute an "offer." Per California Uniform Commercial Code § 2105 a "good," "means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Division 8) and things in action."

Per section § 2106 of the California Uniform Commercial Code, entitled, *Definitions: "Contract"; "Agreement"; "Contract for sale"; "Sale"; "Present sale"; "Conforming" to contract; "Termination";"Cancellation,"* a contract for sale is defined. "(1) In this division unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price (Section 2401). A "present sale" means a sale which is accomplished by the making of the contract. (2) Goods or conduct including any part of a performance are "conforming" or conform to the contract when they are in accordance with the obligations under the contract"

Additionally, section 2206 of California Uniform Commercial Code states, "Offer and acceptance in formation of contract (1) Unless otherwise unambiguously indicated by the language or circumstances (a) An offer to make a contract shall be construed as inviting

21

acceptance in any manner and by any medium reasonable in the circumstances; (b) An order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods, but such a shipment of nonconforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer."

Lastly, the California Uniform Commercial Code addresses a contract for the sale of goods under section § 2204. It states, "Formation in general (1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract. (2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined. (3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

To continue this analysis The Court must examine the Plaintiffs' control of products listed on the websites, whether Alibaba.com, Inc., is a proper party, the Plaintiffs notice of the Defendants patents and profits realized by the Plaintiffs.

### A.  <u>Plaintiffs Control "*Offers for Sell*" Listed on Its Websites</u>

Alibaba Hong Kong has the ability to search for infringing and illegal products at anytime on its websites www.aliexpress.com and www.alibaba.com.  In its answers to Request for Admissions the Plaintiff, Alibaba Hong Kong admits the Plaintiffs manage and control what products will and will not be listed on the website.  Please see **Exhibit 6** ¶ 41, Stewart Affidavit. In its answers to Request for Admissions the Plaintiff, Alibaba Hong Kong admits the Plaintiffs

approve who may list products on its website and it chooses who may not be listed on their websites.  Please see **Exhibit 6** ¶ 41, Stewart Affidavit.

Daniel Draper is an Operations Specialist for Trust and Safety for Alibaba Hong Kong and was identified by the Plaintiff, Alibaba Hong Kong, in its Initial Disclosures to have knowledge of the policies and procedures with respect to prohibited products on the accused websites.  Daniel Draper was deposed by the Defendants in San Francisco, California on March 15, 2012.

Mr. Draper's entire deposition transcript has been designated as "*Confidential-Attorney's Eyes Only*" and has been filed under seal.  Mr. Draper will show that certain key words known to him and members of the trust and safety team could be used to identify products on members' listings that infringed on the Defendants Patents-in-Suit.  Mr. Draper will show that upon receiving notice of an infringing product the trust and safety team of the Plaintiffs could have identified the infringing products.

The Defendants requested Mr. Draper to answer questions pertaining to each of the infringing products listed above and whether the Plaintiffs' trust and safety teams could have identified them.  The Defendants urge the Court to review **Exhibit 4**, pages 45-61, Stewart Affidavit.

Elsa Wong, Senior Legal Director for Alibaba Hong Kong, was identified by the Plaintiff, Alibaba Hong Kong, in its Initial Disclosures to have knowledge of the Product Listing Policy and Take Down Policy.  Elsa Wong was deposed by the Defendants in Hong Kong on October 7, 2011.

In her deposition Ms. Wong testified the Plaintiffs' trust and safety teams can screen members' postings on www.alibaba.com and www.aliexpress.com to determine if goods violate its Product Listing Policy. Please see **Exhibit 2** pages 17-20, Stewart Affidavit.

Therefore, after receiving notice of the Defendants' Patents-in-Suit on January 14, 2010 the Plaintiffs could have and had the ability to control other listing of goods that infringed on the Defendants' Patents-in-Suit.    However, other listings of infringing goods appeared on www.alibaba.com and www.aliexpress.com for sale on February 1, 2010, March 10, 2010, July 6, 2010, August 18, 2010, August 27, 2010, September 13, 2010 and April 19, 2011.

### i.   Alibaba.com, Inc., is Controlled by Alibaba Hong Kong Limited

Separate Plaintiff, Alibaba.com, Inc., is a proper party to the Defendants' claims for patent infringement.    In its answers to Request for Admissions the Plaintiff, Plaintiff, Alibaba.com, Inc., admits that it markets Alibaba Hong Kong websites in the United States. Alibaba.com, Inc., is exists and is organized in the state of California.

Annie Xu is General Manager of Alibaba.com, Inc., and was identified by the Plaintiff, Alibaba.com, Inc., in its Initial Disclosures to have knowledge of the business operations Alibaba.com, Inc.  Annie Xu was deposed by the Defendants in Mountain View, California on November 4, 2011.

Ms. Xu testified that there is no formal marketing agreement between Alibaba.com, Inc., and Alibaba Hong Kong because Alibaba.com, Inc. is "part of Alibaba."  Please see **Exhibit 3** Page 13, Stewart Affidavit.  Ms. Xu also testified that Alibaba.com, Inc., is not a separate company.  Please see **Exhibit 3** Page 14, Stewart Affidavit. Ms. Xu further testified that United States customers call the Alibaba.com, Inc., office to ask questions about products and issues with www.alibaba.com and www.aliexpress.com.  Please see **Exhibit 3** Page 16-20, Stewart

Affidavit.   Furthermore, Alibaba.com, Inc., does no other marketing services for any other clients or customers.

Ms. Xu testified that Alibaba Hong Kong directs all of Alibaba.com, Inc., activities. Please see **Exhibit 3** Page 6, Stewart Affidavit.   Ms. Xu testified that there is only one company and different divisions.  Please see **Exhibit 3** Page 7, Stewart Affidavit.  Ms. Xu testified that she travels to China four times a year for management meetings.

When the infringing products first appeared in January of 2010 the Defendant notified the Plaintiff, Alibaba.com, Inc.,'s office in California.  However, the Defendant received a response from Alibaba Hong Kong.  Additionally, www.alibaba.com lists its California and Hong Kong address on www.alibaba.com.

### B.   Plaintiffs Received Notice of the Defendants Patents and Continued to list "*Offers for Sell*" on Its Websites.

On January 14, 2010 the Defendants' attorney sent the Plaintiffs a letter and copies of its patents advising them that they were placing in the stream of commerce via its online global marketplace (www.alibaba.com and www.aliexpress.com) stun guns that embody the Defendants' patented stun gun.  Hesitantly, and not immediately the Plaintiffs removed only two listings for a short time.  However, shortly thereafter over twenty listings of infringing products reappeared on the Plaintiffs' websites.  Please see **Exhibits H-JJ** of Pennington Affidavit. Immediately, after the filing of the pleadings in this matter the Plaintiffs quickly removed all listings of the infringing products.  However, on April 19, 2011 new listings of products that infringe on the Defendants' patents appeared on the Plaintiffs' websites.

There is no law that binds the Defendants to follow the Plaintiffs IPR Protection Policy. At the heart of this policy is *notice*, which the Defendants provided.  Additionally, at no place in the Plaintiffs IPR Protection Policy does it state that this is the only manner to report a claim.

Furthermore, the Plaintiffs IPR Protection Policy states, that "you are welcome to visit AliProtect," it is not a must.

After receiving notice of the Defendants' Patents-in-Suit on January 14, 2010 the Plaintiffs could have and had the ability to control other listing of goods that infringed on the Defendants' Patents-in-Suit.  However, other listings of infringing goods appeared on www.alibaba.com and www.aliexpress.com for sale on February 1, 2010, March 10, 2010, July 6, 2010, August 18, 2010, August 27, 2010, September 13, 2010 and April 19, 2011.

**C.      Plaintiffs Are Paid a 3.09% Commission on Each "*Sell*" on Its Website www.aliexpress.com.**

Black's Law Dictionary, 7th Ed., defines a commission as "A fee paid to an agent or employee for a particular transaction, usu. as a percentage of the money received from the transaction."  This definition is important to the analysis below.

Persons or companies that are members of Alibaba must agree to an *Escrow Services Agreement*.  This agreement can be found on www.alibaba.com. Please see **Exhibit LL** to the Pennington Affidavit.   The *Escrow Services Agreement* is between a member and Alipay, "regarding your use of the escrow services to registered paid and free members of the www.alibaba.com and www.aliexpress.com sites." Please see **Exhibit LL** to the Pennington Affidavit.  The *Escrow Services Agreement* states, "When releasing any funds, Alipay shall have the right to deduct any financial charges or service fees due and payable to Alibaba.com (if any) and in such amount as instructed by Alibaba.com." Please see **Exhibit LL** to the Pennington Affidavit.

Persons or companies that are members of Alibaba must agree to a *Transaction Services Agreement*.  This agreement can be found on www.alibaba.com. Please see **Exhibit MM** to the Pennington Affidavit.  The *Transaction Services Agreement* states, "4.1 Service fees. Alibaba

26

does charge service fees for AliExpress transactions and inspection transactions according to the fee schedules announced by Alibaba.com on the websites." Please see **Exhibit MM** to the Pennington Affidavit.  Currently, these fees listed on www.alibaba.com state that the seller will pay Alibaba a 3.09% fee on the total price of the order.  Please see **Exhibit 16** to Stewart affidavit.  These documents can also be accessed on www.alibaba.com. This is a commission.

Cindy Chow, Senior Finance Director for Alibaba Hong Kong, was identified by the Plaintiff, Alibaba Hong Kong, in its Initial Disclosures to have knowledge of the operation of the accused websites.  Cindy Chow was deposed by the Defendants in Hong Kong on October 6, 2011.  During her deposition Ms. Chow stated that this 3.09% fee was a "commission" on the total price of the order.  Please see **Exhibit 1** Page 62, Line 13-23, Stewart Affidavit.  Therefore, the Plaintiffs *offer to sell* and *sell* products on its websites www.aliexpress.com and www.alibaba.com that infringe the Defendants Patents-in-Suit.

Additionally, in its answers to Interrogatories the Plaintiff, Alibaba Hong Kong stated that in order for a member to be a China Gold Supplier the member must pay RMB 29,800 ($4,631.00 US); in order for a member to be a Hong Kong Gold Supplier the member must pay HK $34,800 ($4,462.00 US).

In its answers to Request for Admissions the Plaintiff, Alibaba Hong Kong admits the Plaintiffs profit from its websites, as vendors must pay a fee to list their products.  Please see **Exhibit 6** ¶ 5, Stewart Affidavit.

Therefore, per *Rotec*, California statutes and the Plaintiffs' own admissions and deposition testimony the listings on www.aliexpress.com and www.alibaba.com are offers to sell and transactions of sells because the Plaintiffs make a 3.09% commission on the total price of order placed by members and buyers.  Thus, the Plaintiffs violate 35 U.S.C. § 271(a) by infringing on

the Defendants exclusive right to sell their patented products.  A genuine issue of material fact of direct infringement exists and summary judgment is not proper.

## VI.    INDUCED INFRINGEMENT

The Plaintiffs infringe on the Defendants' patents Nos. D561,294 S, and D611,115 S by inducing third parties to infringe on the Defendants patents-in-suit.  The relevant parts 35 U.S.C. § 271(b) states, "whoever actively induces infringement of a patent shall be liable as an infringer."

### A.    Circumstantial Evidence of Induced Infringement is Sufficient to Prove Genuine Issues of Material Fact to Survive a Motion for Summary Judgment.

Thus a person infringes by actively and knowingly aiding and abetting another's direct infringement of the patent.  *4 Chisum on Patents*, § 17.04, 17-70.  Section 271(b) recites in broad terms that one who aids and abets an infringement in likewise an infringer.  *4 Chisum on Patents*, § 17.04, 17-85.    The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringement.  *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553, 16 USPQ2d 1587, 1594 (Fed. Cir. 1990).  Section 271(b) deals with active inducement of infringement. . . It covers the range of actions by which one may cause, urge, encourage, or aid another to infringe a patent.  *4 Chisum on Patents*, § 17.01, 17-3.

Additionally, a plaintiff is not required to prove that a defendant exercised control over a third party infringer's actions to support a finding of inducement liability.   *VLT Corp. v. Unitrode Corp.*, 130 F.Supp.2d 178, 200-201 (D. Mass. 2001).   The plaintiff must only demonstrate by direct or circumstantial evidence that the defendant knowingly aided and abetted another's direct infringement.  *Id.* at 104.  The standard is analogous to a criminal statute

imposing liability for one who acts as an accessory before the fact.  *Sims v. Western Steel Co.*, 551 F.2d 811, 817 (10th Cir. 1977).

Direct infringement may be established by circumstantial evidence.  *Moleculon Research Corp. v. CBS, Inc.*, 793 F2d 1261, 229 USPQ 805 (Fed Cir. 1986).  "If CBS is arguing that proof of inducing infringement or direct infringement requires direct, as opposed to circumstantial evidence, we must disagree. It is hornbook law that direct evidence of a fact is not necessary. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330, 5 L. Ed. 2d 20, 81 S. Ct. 6 (1960)."  *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986)  Inducement of infringement of a patent may be established by circumstantial evidence that direct infringement occurs as a result of the infringer's acts. *Hilgrave, Inc. v. Symantec Corp.*, 272 F. Supp.2d 613, 620-21 (E.D. Mich. 2003).  "While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Moleculon Research Corp. v. CBS, Inc.*, 793 F2d 1261, 1272, 229 USPQ 805, 813 (Fed Cir. 1986).  The requisite intent to induce infringement may be inferred from all of the circumstances. *Water Technologies Corp., Supra v. Calco, Ltd., Supra*, 850 F.2d 660, 669, 1988 U.S. App. LEXIS 8175 (1988).  Furthermore, a crucial element of induced infringement is that the inducer must have actual or constructive knowledge of the patent.  *Insituform Technologies, Inc., v. CAT Contracting, Inc.*, 161 F.3d 688, 695, 48 USPQ2d (BNA) 1610 (1998).

Additionally, one Court stated, "Civil culpability need not stop with the dealer who does the final act of making, using or selling.  The prohibition of the law, now codified in § 271(b), extends to those who induce the infringement.  Of course inducement has connotations of active steps knowingly taken . . . . but with that qualifying approach, the term is as broad as the range of

actions by which one in fact causes, urges, or encourages, or aids another to infringe a patent."

*Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 411, 137 USPQ 84 (5th Cir. 1963).

"There is no legal basis for [an accused infringer's] claim that [a patent owner] must prove specific instances of direct infringement in order to recover damages from inducement with regard to those products that that are capable of a non-infringing mode of operation." *Hilgrave, Inc. v. Symantec Corp.*, 272 F. Supp.2d 613, 620-21 (E.D. Mich. 2003). "A party may establish intent to induce infringement through circumstantial evidence." *Id.*

"In *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.,* 1 Fed. Appx. 879 (Fed. Cir. 2001)*,* the district court had granted summary judgment of damages to the patentee for each 'Green Machine saw' sold by the defendants....On appeal, the Defendant Green Machine Corporation argued 'that a material question of fact has been raised regarding whether some or many of the Green Machine saws sold were actually used in a directly infringing manner.'...The court found the patentee's reliance upon advertisements and an Operation and Maintenance manual insufficient to support a finding that each sale of the Green Machine saw led to an act of infringement, despite the fact that the patentee had relied upon essentially the same evidence at trial to prove inducement of infringement....The court noted, however, that it was 'not imply[ing] that [the patentee] is required to demonstrate a one-to-one correspondence between united sold and directing infringing customers. Proof of inducing of infringement or direct infringement may be shown by circumstantial evidence. *Id.*

Thus, *Chiuminatta* does not support [an] argument that any recovery of damages for inducement of infringement must be limited to instances in which [a patent owner] may rely upon circumstantial evidence to prove damages from inducement."  "Although proof that a defendant has actively induced infringement requires proof that another has directly infringed the

patent in suit, such direct infringement may be established by circumstantial evidence of extensive sales by defendant of a product capable of use to practice the patented method and distribution by defendant of an instruction manual teaching the patented method." *Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 180 (S.D.N.Y. 1999); *4 Chisum on Patents*, § 17.04, 17-74.

In *Hauni Werke Koerber & Co. v. Monlins*, Ltd. 183 USPQ 168 (E.D. Va. 1974), the Court suggested that the knowledge requirement may be less with Section 271(b).   "The language of § 271(b) does not refer to *knowledge* on the part of the contributory infringer as does the language of § 271(c)."  *Id.* at 171.  The Court went on to say, "the Court is inclined toward the view that an inducement under § 271(b), like direct infringement under § 271(a), does not require a specific intent. . . . in any event, the Court considers it within the scope of the pleadings for the plaintiff to prove that a specific intent was here present."  *Id.*

*4 Chisum on Patents*, § 17.04, 17-84, states, "The decisions leave doubt as to the "intent" requirement's meaning for active inducement of the infringement."   One commentator even noted the following:

> "A clear definition of the mens rea required for inducement liability has eluded even the Federal Circuit: must a § 271(b) plaintiff prove that the defendant specifically intended to induce violation of the law, . . . or is it sufficient prove that the defendant intended to induce the acts later held to constitute infringement? . . .the notion that a defendant may escape liability under § 271(b) merely by obtaining a plausible noninfringement opinion remains highly controversial among both court and commentators.

Patent Law Active Inducement of Infringement District Court Hold That Inducement Liability Requires Proof of Intent to Induce Violation of the Law – *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, No. C 97-04203 Crb, 2000 WI 1897300 (N.D. Cal. Dec. 22, 2000), 115 Harv. L. Rev. 1246, 1249 (2002).

The Plaintiffs induced a class of twelve factories in the Peoples Republic of China to infringe on the Defendants patents-in-suit by offering infringing goods for sell on www.alibaba.com and www.aliexpress.com.  Please see **Exhibits D, E and H through JJ,** to Pennington Affidavit.

The Plaintiffs attend numerous trade shows making offers to sell goods and selling goods that infringe on the Defendants Patents-in-Suit.  The Plaintiffs have 5,000 sales team members that make sales call on factories in China.  Ms. Wong testified to this fact.  Please see **Exhibit 2,** page, 24-25 to Stewart Affidavit.

**B.**     **Circumstantial Evidence is Appropriate to Support Defendants' Broad Theory of Member Class Induced Infringement by the Plaintiffs.**

The Plaintiffs induced a class of twelve factories in the Peoples Republic of China to infringe on the Defendants patents-in-suit.  Additionally, the Plaintiffs pro-actively visit factories to sign up new members to www.alibaba.com and www.aliexpress.com and have the opportunity to view the members' goods.  Please see **Exhibit 16** to Stewart Affidavit.

In *Semiconductor Energy Laboratory Company LTD. v. Chi Mei Optoelectonics Corp.*, et al., 531 F. Supp. 2d 1084; 2007 U.S. Dist. LEXIS 44288, Judge Patel denied a motion for summary judgment for non-infringement.  In *Semiconductor* the Plaintiffs filed suit against the Defendants for induced patent infringement.   The Defendants claimed that specific intent could not be proven.  Judge Patel stated, "[i]ntent is a factual determination particularly within the province of the trier of fact and may be inferred from all of the circumstances." *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1378 (Fed. Cir. 2004).  As such, the court should be hesitant to grant summary judgment when presented with circumstantial evidence of intent. Given the factual allegations regarding return and repair centers, coupled with the

additional affirmative acts alleged below, the jury should be permitted to determine whether to infer intent based on the totality of the circumstantial evidence presented. Accordingly, triable issues of fact exist with respect to intent, and summary judgment is inappropriate." *Semiconductor Energy Laboratory Company LTD.,* at 1113.

Additionally, Judge Patel pointed out, "that where a plaintiff alleges inducement based on a defendant's customers as a class, broader theories of liability are appropriate and the court may consider circumstantial evidence of direct infringement. ("Plaintiffs who identify an entire category of infringers (e.g., the defendant's customers) may cast their theories of vicarious liability more broadly, and may consequently seek damages or injunctions across the entire category.").  In *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986), the court held that "circumstantial evidence of extensive puzzle sales, dissemination of an instruction sheet teaching the method of restoring the preselected pattern with each puzzle, and the availability of a solution booklet on how to solve the puzzle" were sufficient to meet the plaintiff's burden of showing infringement by purchasers of the infringing puzzles under section 271(b)."  *Id.*

Additionally, in *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1065-66 (N.D. Cal. 2006), Judge Wilken held that where there was "circumstantial evidence that those who followed the product instructions infringed" the patent, "evidence that some, and possibly many, consumers did not infringe" was insufficient to obtain summary judgment on the plaintiff's claim of inducement.

Therefore, in *Moleculon*, *Sharper Image*, and *Semiconductor* circumstantial evidence was used to show induced infringement of third-party direct infringement when direct infringers are identified as a class.

Likewise as in this case, the alleged third-party direct infringers that were induced by the Plaintiffs are all member of a class – paying members of the Plaintiffs' accused websites.

The Defendants filed a Motion for a Letter of Request to be issued by the Court for foreign discovery on the twelve (12) factories in China that were induced by the Plaintiffs to list illegal products on the Plaintiffs' websites.  The Court granted the Motion and executed the Letter of Request.  Defendants' counsel has forwarded the Letter of Request to the International Legal Cooperation Center in Beijing, China.  Please See Exhibit "PSP Letter of Request." Dkt. No.  The Defendants have yet to receive a response from the International Legal Cooperation Center.

The Plaintiffs induced a class of twelve factories in the Peoples Republic of China to infringe on the Defendants patents-in-suit by offering infringing goods for sell on www.alibaba.com and www.aliexpress.com.  Please see **Exhibits D, E and H through JJ,** to Pennington Affidavit.

The Plaintiffs attend numerous trade shows making offers to sell goods and selling goods that infringe on the Defendants Patents-in-Suit.  The Plaintiffs have 5,000 sales team members that make sales call on factories in China.  Ms. Wong testified to this fact.  Please see **Exhibit 2,** page, 24-25 to Stewart Affidavit.

Brian Kam Leng Tak is a member of the Sales Department of Alibaba Hong Kong and was identified by the Plaintiff, Alibaba Hong Kong, in its Initial Disclosures to have knowledge of the policies and procedures related to the sale of Alibaba.com memberships.  Brian Kam Leng Tak was deposed by the Defendants in San Francisco on March 15, 2012.

During his deposition, Mr. Kam testified that sales team members canvass and make cold calls to sign up members on www.alibaba.com and www.aliexpress.com.  Please see **Exhibit 5,**

page, 10-12 to Stewart Affidavit.  Additionally, Mr. Kam testified that sales team members are paid a commission for selling memberships on the Alibaba websites.  Please see **Exhibit 5,** page, 12 to Stewart Affidavit.  Mr. Kam testified that sales members go the actual factories to sign up new members on the Alibaba websites.  Please see **Exhibit 5,** page, 15-16 to Stewart Affidavit. At that time, Mr. Kam testified that sales team members have the opportunity to view the factories goods.  Please see **Exhibit 5,** page, 16 to Stewart Affidavit.

Additionally, the Plaintiffs induced the class of attendees of the 2009 and 2010 ASD Tradeshow in Las Vegas, Nevada to infringe on the Defendants patents-in-suit.  The ASD tradeshow is attended by thousands of exhibitors and buyers.  At the March 2010 and August 2010 tradeshow Alibaba.com, Inc. had numerous computer terminals at its booth that allowed attendees of the trade show to search the Plaintiffs members' listings and offers to sell.  The Defendant was an exhibitor at the same two tradeshows.

The ASD Las Vegas trade show is not the only show attended by the Plaintiffs in the United States.  Please see **Exhibit 10** ¶ 8, Stewart Affidavit.  The Plaintiffs attend numerous trade shows all over the United States whereby they offer to sell and sell infringing products. Please see **Exhibit 10** ¶ 8, Stewart Affidavit.  Additionally, as some trade shows the Plaintiffs show product samples of members.  Please see **Exhibit 10** ¶ page 35, Line 16, Stewart Affidavit.

### C.    *Hewlett-Packard, Napster, and MGM, Cases Support Plaintiff's Liability of Induced Infringement.*

The totality of the circumstances of the Plaintiffs actions implicate the Plaintiffs of induced infringement.  In *Semiconductor* Judge Patel supported the totality of the circumstances test to indicate evidence of induced infringement.  "[T]he jury should be permitted to determine whether to infer intent based on the totality of the circumstantial evidence presented.

Accordingly, triable issues of fact exist with respect to intent, and summary judgment is inappropriate. *Semiconductor Energy Laboratory Company LTD.,* at 1113.

In *Hewlett-Packard Co., v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 15 USPQ2d (BNA) 1525 (1990), the Court discussed the question of what level of knowledge or intent is required to find active inducement under § 271(b).  The Court stated that 35 U.S.C § 271(b) is much broader than § 271 (c) and certainly does not speak of any intent requirement to prove active inducement.  But, proof of intent must be proved by at least circumstantial evidence.  *Id.* at 1469.  The Court looked at the totality of the circumstances to determine whether induced infringement occurred in the case.  *Id.*

In *A & M Records, Inc., v. Napster, Inc.,* 239 F.3d 1004, (9th Cir. 2001), the Court held that software created and hosted by Napster violated copyright laws.  Napster hosted a website whereby individuals transferred and stored files via peer-to-peer file sharing.  The individuals were actually the party copying and placing the content on Napster's website but, the Plaintiff's sued Napster, who hosted the website.  The content being copied was the subject of the Court's analysis.  Plaintiffs claimed that Napster users are engaged in the wholesale reproduction and distribution of copyrighted works, all constituting direct copyright infringement and that Napster was a contributory infringer.  The district court agreed.  The Ninth Circuit affirmed.

In *MGM v. Grokster*, 545 U.S. 913, 125 S. Ct. 2764 (2005), the Court discussed whether a distributor of a product is liable for acts of infringement by third parties who illegally use the product.  This case addressed a peer-to-peer network created by the Defendants whereby its users could share electronic files.  The Defendants in the case were sued for copyright infringement by *MGM*.  The users of the Defendant's network were transferring movies electronically over the network. (Although this case is a copyright infringement case it discusses patent infringement

and cites patent infringement cases.)  Again, as in the *Napster* cases the Plaintiffs did not sue the users.  The Plaintiffs sued the third party, *Grokster*, who provided the access to the infringement. The Court stated, "one who distributes a device with the object of promoting its use to infringe copyright. . . .is liable for the resulting acts of infringement by third parties."  *Id*. at 918.

In discussing patent infringement the Court went on to say, "The classic case of direct evidence of unlawful purpose occurs when one induces the commission of infringement by another, or "entices or persuades another" to infringe. . . . as by advertising.  *Id*. at 935.  The Court in this case held that the Defendant was liable as a contributory infringer based on the inducement rule founded in patent law. *Id*. at 936.  The Court stated, "the inducement rule, too, is a sensible one for copyright, as shown by clear expression or affirmative steps taken to foster infringement by third parties."  *Id*. at 937.

### D. Doctrine of Willful Blindness Implicates Plaintiffs of Induced Infringement

On May 31, 2011 the Supreme Court of the United States clarified the intent requirements under 35 U.S.C. § 271(b) to find induced patent infringement.  Please See *Global-Tech Appliances, Inc., Et Al., v. SEB S.A.*, 131 S. Ct. 2060, 98 U.S.P.Q2D 1665 (2011).  The Supreme Court held, in an opinion written by Justice Alito, induced infringement under 35 U.S.C. § 271(b) requires knowledge that the induced acts constitute patent infringement and deliberate indifference to a known risk that a patent exists does not satisfy the knowledge required by the statute.  *Id.* at 2068.

However, the Court held that the doctrine of willful blindness may be applied to find knowledge that the Defendant was aware of a patent and therefore guilty of patent infringement under 35 U.S.C. § 271(b).  *Id.* at 2069.  The issue was important in the case because, as described below, there was no direct evidence that the accused inducing infringer had actual knowledge of

the patent in question until the patent owner filed suit for infringement. The doctrine of willful blindness has two requirements. One, the defendant must subjectively believe that there is a high probability that a fact exists and two; the defendant must take deliberate actions to avoid learning of the fact. *Id*. at 2070.

In *Global-Tech Appliances,* the lower Courts found that *Global-Tech Appliances* (a British Virgin Islands corporation) and its subsidiary, Pentalpha (a Hong Kong corporation), directly infringed and induced other parties to infringe on the Plaintiffs' patent. *Id.* at 2064. In the District Court the plaintiffs filed suit against the retailer, Montgomery Ward, who was selling the product in their retail locations. Please See *SEB S.A. v. Montgomery Ward & Co.*, 137 F. Supp. 2d 285 (S.D.N.Y. 2001). The Defendant, *Global-Tech Appliances,* argued that it could not have infringed because it did not know about the Plaintiffs' patent until it received notice of the lawsuit. But, even after receiving notice of the patent the Defendant, *Global-Tech Appliances,* went on selling the infringing product. *Id*. Additionally, the Court held that the doctrine of willful blindness applied *Global-Tech Appliances* since the Defendant knew that the infringing products could be purchased by persons in the United States. *Id*. at 2070. Furthermore, the Court held that the doctrine applied because the Defendants, had notice that the infringing product was a "knockoff" of the Plaintiffs' product. *Id.* at 2071.

The test created in Global-tech is met in the instant case. First, the Plaintiffs go to great lengths via its Intellectual Property Rights Policy to attempt to protect third-parties intellectual property rights. Therefore, the Plaintiff admits it has reason to know that third-parties patents may be infringed upon by some person. Secondly, the next prong of the test is met because the Plaintiffs had notice of the Defendants' patent on January 14, 2010, the Plaintiffs have the ability

to police remove members' listings from its websites, subsequent infringing products were listed and the Plaintiffs didn't inform the third-party infringers that their product was illegal.

Similar to the Defendant in *Global-Tech Appliances* the Plaintiffs had knowledge of the Defendants' patents, had knowledge that its members' products were knockoffs and knew that their members' products could be purchased in the United States.  The Plaintiffs induced a class of twelve factories in the Peoples Republic of China to infringe on the Defendants patents-in-suit by offering infringing goods for sell on www.alibaba.com and www.aliexpress.com.  Please see **Exhibits D, E and H through JJ,** to Pennington Affidavit.

Additionally, the Plaintiffs attend numerous trade shows all over the United States whereby they offer to sell and sell infringing products.  Please see **Exhibit 10 ¶ 8,** Stewart Affidavit.  Additionally, as some trade shows the Plaintiffs show product samples of members. Please see **Exhibit 10 ¶ page 35, Line 16,** Stewart Affidavit.  Whereby the Plaintiffs generally induce the class of trade show attendees by offering to sell infringing goods on computer terminals located at their booth.

The doctrine of willful blindness will apply in this case and will be sufficient for the Defendants to survive summary judgment.

## VII.    CONCLUSION

Therefore, the Plaintiffs Motion for Summary Judgment should be denied and a jury should determine the questions of material facts.  The Plaintiffs directly infringe on the Defendants Patents-in-Suit by making offers to sell and completing sells on www.aliexpress.com.  After receiving notice of the Patent-in-Suit the Plaintiffs continued to induce the infringement of a class of factories and trade show attendees by selling memberships

on www.aliexpress.com and www.alibaba.com whereby the members made offers to sell and sold infringing products.

Most Respectfully,

Chris H. Stewart (Ark. Bar No. 03-222)
arklaw@comcast.net
*Admission Pro Hac Vice*
Stewart Law Firm
904 Garland Street
Little Rock, AR 72201
Telephone: (501) 353-1364
Facsimile: (501) 353-1263

By: /s/ Chris H. Stewart

David Owens
**OWENS TARABICHI LLP**
111. N. Market St., Suite 730
San Jose, California 95113
Telephone:    408.298.8200
Facsimile:    408.521.2203

Attorneys for Defendants,
P.S. Products, Inc. and Billy Pennington

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that the foregoing was electronically sent to the following:

- Ryan Marton
  rmarton@fenwick.com

On this 19th day of April, 2012.

By: /s/ Chris H. Stewart