UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

| | |
|---|---|
| ALIBABA.COM HONG KONG LIMITED, a Hong Kong corporation, and ALIBABA.COM, INC., a Delaware corporation,<br><br>                 Plaintiffs,<br><br>  vs.<br><br>P.S. PRODUCTS, IC., an Arkansas corporation, and BILLY PENNINGTON, an individual,<br><br>                 Defendants. | NO. C 10-04457 WHA<br><br><br><br>San Francisco, California<br>Thursday<br>May 10, 2012<br>2:08 p.m. |

## TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

**For Plaintiffs**          Fenwick & West, LLP
                           555 California Street
                           12th Floor
                           San Francisco, CA  94104
                           (415) 875-2300
                           (415) 281-1350 (fax)
             **BY:  DARRYL M. WOO**
                           **LESLIE KRAMER**
                           **RYAN J. MARTON**

**For Defendant**          Stewart Law Firm
                             904 Garland Street
                           Little Rock, AK  72201
                           (501) 353-1364
                           (501) 353-1263 (fax)
             **BY:  CHRIS H. STEWART**

Reported by:     Lydia Zinn, CSR #9223, RPR, CRR
          Official Reporter - U. S. District Court

1          **THE COURT:**  Please be seated.  Okay.  I need to ask

2     everyone to make their main points, because time is short.

3               *Alibaba versus P.S. Products, Inc*.  Each side has

4     about ten minutes, at most.  So please make your main point.

5          **MR. WOO:**  Thank you, your Honor.  Darryl Woo,

6     Fenwick & West, on behalf of Alibaba.com Hong Kong, Limited,

7     and Alibaba.com, Inc.

8               I apologize for my voice, your Honor.  I woke up this

9     morning with laryngitis.

10         **MR. STEWART:**  Good morning, your Honor.

11    Chris Stewart, on behalf of Defendants P.S. Products; Mr. Billy

12    Pennington.  And this is Mr. Billy Pennington here in the

13    courtroom today.

14         **THE COURT:**  Welcome, again, Mr. Pennington.  Please

15    have a seat.

16              This is a motion by Defendant.  Right?

17         **MR. WOO:**  It's our motion, your Honor.

18         **THE COURT:**  Yes.

19         **MR. WOO:**  Yes.

20         **THE COURT:**  All right.  Please go ahead.

21         **MR. WOO:**  Thank you, your Honor.  We brought this

22    motion after the close of discovery, because there's been no

23    evidence of any direct or indirect infringement.

24              It's undisputed that our clients -- my clients --

25    never take possession or title to the accused stun-gun

products.  And the idea of that posting -- a lot of third

parties to post advertisements for those products that our

website does not constitute any kind of direct infringement.

As far as inducements of infringement, there is no

affirmative act with specific intent to infringe.  There's been

no evidence of any intent.

P.S. Products points to our activities at trade

shows, but there's no evidence that we do anything to promote

products at those trade shows.  All we do is promote our

website and use of our website for other people to use.

They point to visits to factories.  There's no

evidence that we visited any of the stun-gun factories that are

accused of making the infringing goods.  There's been no

evidence of any communications with the factories that make the

infringing goods.

**THE COURT:**  How does your website make money?

**MR. WOO:**  We make money by getting people to signed

up as members of our website, and posting products on their --

on our website.

**THE COURT:**  So is the company and whoever makes these

infringing goods -- are they a member?

**MR. WOO:**  There's no evidence that that -- the

companies are actually members.

**THE COURT:**  Well, does that mean there's no evidence

that's in the record, or no evidence?

1              You're not answering my question.

2              **MR. WOO:**  Well, so --

3              **THE COURT:**  Are they members, or not?

4              **MR. WOO:**  Well, they could be free members.  Yes,

5   they could be free members.  They would have to be members to

6   post their goods on the site, but -- but just because they're

7   members doesn't make our clients inducing infringement, because

8   there's no -- you need an affirmative act with specific intent

9   to infringe, which requires that we know about the

10  infringement; we know about -- the fact that they're making

11  infringing goods.

12             There's no evidence that we have any of that kind of

13  knowledge.

14             All that PSP points to is our attendance at trade

15  shows where we promote the website use and membership.  And

16  they point to factory visits, but none of the factories that we

17  visited were the stun-gun makers.  So there's absolutely no

18  evidence of that.

19             They point -- they articulate some kind of theory of

20  willful blindness, but it's hard to tell from their papers what

21  they're really saying in that regard; but that requires a

22  deliberate action to avoid learning of a specific -- of a fact

23  that -- of infringement.  And we -- there's no evidence of

24  that.

25             If you look at the time line in this case,

1 your Honor, they give gave us notice of the -- of patents in

2 about January of 2010.  We -- at the time they first gave us

3 notice, there was no indication of what they were complaining

4 about, other than the patents.

5          They didn't give us notice of what links there were,

6 or what -- who was making -- who was allegedly selling the

7 products.

8          We said,

9               "Well, use our system."

10          We have a system whereby we -- that you can complain

11 to us.  And we'll take down infringing -- listings of

12 infringing goods.

13          They sent us back a message saying,

14               "Please be advised that my client will

15               not be filling out any forms provided by

16               you."

17          And they gave us two screenshots of products that

18 they alleged to infringe.  And they said,

19               "These are the two -- the two website

20               screenshots of products offered by you that

21               infringe."

22          So we investigated.  We looked into this.  We sent

23 notices to the two web -- the two makers of those products.

24          They didn't respond back.  So, in accordance with our

25 IPR policy, we took down those links.  And then we never heard

1    from them again, until they filed the complaint in Arkansas.

2            So there's -- just to the contrary of the cases that

3    hold liability for secondary infringement, where people know

4    about the infringement, and promote it, there's just the

5    opposite of that here.  We asked for the notice of

6    infringement.  They gave us two notices.  We never found out

7    about any other notices until they filed suit.  And so there's

8    nothing to suggest any kind of willful blindness, whatsoever.

9            And then they filed suit and, through that notice,

10   supplied us with additional allegedly infringing links.  We

11   took those down, as well, following our procedures.  And then

12   that case got dismissed on jurisdictional grounds --

13           **THE COURT:**  All right.  All right.

14           **MR. WOO:**  -- et cetera.

15           **THE COURT:**  Time is short.  So tell me this.  What is

16   the most analogous and best decision -- not two cases; just one

17   case -- you want to make sure I read before I make a ruling?

18           **MR. WOO:**  Well, that would be the *Tiffany versus eBay*

19   case, your Honor.  In that case, you know, there was -- they --

20   eBay even knew about the fact that people were selling

21   infringing goods; knock-off, counterfeit goods on their site.

22   They warned against it; and yet there was no liability found,

23   because they had takedown procedures.  And they filed --

24           **THE COURT:**  Was that a Federal Circuit decision?

25           **MR. WOO:**  It's a Fed. Circuit decision.

1          **MR. MARTON:**  Second Circuit.

2          **MR. WOO:**  Second Circuit.

3          **THE COURT:**  Was that a patent case?  Was that some

4 other kind of case?

5          **MR. WOO:**  That was a trademark case.

6          There are no patent cases that are analogous here.

7          **THE COURT:**  All right.  Let me hear from the

8 Plaintiff.  I'm sorry.  I guess it's the Defendants.

9          Good afternoon, your Honor.  Thank you for the

10 Court's time.  It's a pleasure to be here today.

11          Quickly, your Honor, there are material facts in

12 dispute.  And, as we know, they are viewed in the light most

13 favorable to my client.  They do make money other than members'

14 fees off of products that are sold on their websites.  I want

15 to point you to Exhibit 16 to my affidavit.

16          I would like to point you to Cindy Chao's (phonetic)

17 deposition, page 62, where they specifically state that they

18 received fees off the cost of the total transaction on the

19 website Aliexpress.com.  That is an offer to sell; and it is a

20 sale.  It is in direct violation of 271(a).  My client has the

21 exclusive right to sell these products.

22          The statute protects two types of people.  One is

23 importing, which could be the middleman, could be the

24 distributor, or could be the manufacturer.  They import them.

25 They offer to sell.  And the sell protects my client against

1 the person who actually transacts it; who actually make the

2 money.

3         And they seem to think that because they don't

4 possess the goods, they can't be found liable of patent

5 infringement.

6         That makes no sense.  Websites are a new form of

7 store place.  They are a storefront.  You do not have to have a

8 street.  There are websites from, you know, Amazon, to eBay,

9 to --

10         **THE COURT:**  Well, tell me.  Walk through the --

11 without embellishment and argumentation, walk through the way

12 the -- for these particular products, how the transaction would

13 have worked on the website.

14         **MR. STEWART:**  Yes, sir.  If -- they listed on

15 Exhibit GG and Exhibit FF to Mr. Pennington's -- to his

16 declaration, they list two products on Aliexpress.com.  If you

17 go to Aliexpress.com and you purchase a product, they place any

18 moneys in an escrow service that they own, called "Alipay.com."

19         **THE COURT:**  "They" being who?

20         **MR. STEWART:**  Alibaba Hong Kong, Limited.

21         **THE COURT:**  Who -- so wait.  Let's say I'm living

22 in -- I don't know -- Nebraska.  And I tune into the website.

23 And there, I see the accused product --

24         **MR. STEWART:**  Yes, sir.

25         **THE COURT:**  -- big as day.

1          Is that the way it's going to look?  I mean, it's

2   going to be a picture of the accused product?

3          **MR. STEWART:**  Yes, sir.  And I have two of them here.

4          **THE COURT:**  Do you have a picture of the website, and

5   what it would look like?

6          **MR. STEWART:**  Yes, sir.

7          **THE COURT:**  Show that to me, so I can --

8          **MR. STEWART:**  Yes, sir.

9          **THE COURT:**  What I'm trying to understand is the flow

10  of the money.  So show me.  Show me what the website looks

11  like.  Let counsel see it.

12          (Whereupon a document was tendered to the Court)

13          **THE CLERK:**  Here, counsel.

14          **THE COURT:**  Let counsel see it.

15          **MR. STEWART:**  Oh.  I'm sorry.

16          (Whereupon a document was tendered to the Court).

17          **THE COURT:**  For the record, what is it I'm looking

18  at?

19          **MR. STEWART:**  Your Honor, that is Exhibit FF.  And it

20  is a screenshot that -- that we printed out as an exhibit to

21  our complaint of the infringing products.  It was on

22  August 27th, 2010.  It was on Aliexpress.com.  It is by the

23  company, Guangzhou Zhi Cheng Industry Company, Limited.

24          And, your Honor, if you were to go to that website

25  and you were to buy that, they own the escrow service.

1          **THE COURT:**  It says, "Add to cart."

2          **MR. STEWART:**  Yes, sir.  You add it to cart.  That is

3    an offer to sell.  And if you purchase that, that money goes

4    into their escrow service.  They own it.  And they take a 3.09

5    commission from the transaction and sale of that product.

6          Then this company, who is the wholesaler and

7    manufacturer -- they will drop ship it directly to you.  Drop

8    shipment's done by every major company in the world.  They

9    don't have to have a storefront.  You can buy it anywhere, and

10   they can send it directly to you.

11         We didn't know this until we deposed them; until we

12   did our discovery.

13         In Exhibit 16, they show you that if you purchase a

14   product on Aliexpress.com, you will pay a 3.09 percent on the

15   total cost of the transaction.

16         Cindy Chung, in her deposition -- which is the senior

17   finance director for Alibaba.  We deposed her in Hong Kong.

18   She called that a "commission."  Your Honor, a commission is:

19   You make money on a sale.

20         I mean, I'm a country boy, but a commission is:  You

21   sold it, and you're making your percentage.

22         That -- not only -- that's one.  They don't have to

23   sell that.  If they just offer it to sell it, they're in

24   violation of 271(a), and we get past summary judgment.  And the

25   jury can decide whether or not that's an offer to sell.  Let

1    them -- that is a material --

2          **THE COURT:**  What does 271 say, again?

3          **MR. STEWART:**  Statute -- the statute of 271 says that

4    you can -- you can offer it, make an offer to sell.  You can

5    sell, except as otherwise provided.

6                "Whoever, without authority, makes,

7                uses, offers to sell, or sells any patented

8                invention within the United States or

9                imports into the United States any patented

10               invention during the term of the patent,

11               therefore, infringes the patent."

12         Your Honor, I will concede that if they did not make

13   a percentage on that -- they did not make a 3.09 percent

14   commission on that, which they admit to in testimony of a

15   deposition and information that they gave us -- we wouldn't

16   have direct infringement.  We didn't know that until discovery.

17   I'm not making it up.  They gave it to us.

18         And then when they sell it and somebody buys it --

19         **THE COURT:**  How can that be?  Because Counsel just

20   told me they do not make money on it.  The only way they make

21   money is if there's a member.  And he said this one was a free

22   member.  That's what he told me.  And counsel would not

23   misrepresent anything.

24         **MR. STEWART:**  That's what I would believe, too.

25         From the discovery we did and we're presenting to

1 you, by their client's depositions and from the documents that

2 they gave us, that says otherwise.  And that is in the record.

3 And that is part of our summary judgment.

4          **THE COURT:**  This says, "Add to cart."

5          **MR. STEWART:**  Then it's an offer to sell.  That

6 violates the statute.  They don't have to buy it; they just

7 have to make an offer to sell it.

8          **THE COURT:**  All right.  You sit down for a second.

9          This is an offer to sell.

10          **MR. WOO:**  No, your Honor.

11          **THE COURT:**  This is an offer to sell, all day along.

12          What kind of --

13          What do you mean:  This is not?

14          Add to your cart.  And you get 3 percent.

15          You told me a minute ago you didn't make any money on

16 this.

17          **MR. WOO:**  There are two websites.  The website I was

18 talking about was Alibaba.com.

19          **THE COURT:**  Why didn't you mention this one?

20          **MR. WOO:**  Well, it's -- your Honor, I didn't mention

21 that one.  I'm sorry.  Aliexpress does not --

22          **THE COURT:**  I depend on you lawyers to be honest with

23 me.

24          **MR. WOO:**  No, no --

25          **THE COURT:**  You didn't reveal this.  And you're going

1  to lose this motion on account of this.

2         MR. WOO:  No, your Honor.  They don't take title.

3  The transaction --

4         THE COURT:  I don't care about the taking title.

5  Here you are with an infringing good, big as day.  You're

6  selling it on the Internet.  You want to escape, because you

7  don't take title, even though you're making money on it?

8  You'll get to take this to the Federal Circuit.  And maybe

9  you'll win it.

10        Right here, you're going to lose this motion.  And

11 you should not have told me this --

12        MR. WOO:  No.

13        THE COURT:  You should have told me up front that add

14 to the cart --

15        MR. WOO:  Add to the cart is not an offer for sale,

16 your Honor.

17        THE COURT:  When it is in this courtroom, it is --

18        MR. WOO:  It's not posted by our client.

19        THE COURT:  -- unless you have a Federal Circuit case

20 that says it's not.

21        MR. WOO:  *DSU Medicals*, your Honor, says that.

22        THE COURT:  I'm going to look at it.

23        MR. WOO:  *DSU Medicals*.  It says in order to induce

24 infringement, you have to have knowledge of the infringing

25 good; that it's infringing.

1       **THE COURT:**  That's a fact question.

2       **MR. WOO:**  It's not a fact question, because there's

3  no evidence to the contrary.

4       **THE COURT:**  They sent all of these messages, saying,

5               "You're infringing."

6       They sent you a copy of the patent.

7       And you sent them a form, saying,

8               "Fill out the form."

9       That's like when you call up the company, and you

10  want to get a hold of a live person.  They give you the

11  run-around for the next 16 hours on the telephone, and/or send

12  you a form:  Fill out the form, and everything will be cool.

13  I --

14       **MR. WOO:**  They have to tell us at least where to find

15  the infringing good.  They finally told us.  And then we took

16  it down.

17       I mean, we don't have any control over the sellers.

18  They post the listings.  We have no control over what they

19  post.

20       **THE COURT:**  It will be for the jury to decide; won't

21  it?  That will be for the jury to decide:  Whether or not you

22  knew or you didn't know.  Maybe you'll win.  That's why we have

23  juries.

24       **MR. WOO:**  There's no evidence that --

25       **THE COURT:**  Yes, there is evidence.  There is

1  evidence.  I've seen it.  It's right here:  Add it to the cart.

2          And he sent you letters, and a copy of the patent.

3          **MR. WOO:**  But there's no way for us to know that

4  that's infringing, your Honor, because they admit that they,

5  themselves, post on the site.  They, themselves, authorize

6  other people to sell things on their -- on the website.

7          So there's no way for us to know whether it's a

8  licensed product, an authorized product that's been sold.

9          **THE COURT:**  I'm going to -- listen.  I'm going to

10 read what you have to say.  I'm upset that you weren't honest

11 with me.  That's my view, anyway.

12         **MR. WOO:**  I apologize, your Honor.

13         **THE COURT:**  I'll excuse you, because you've got

14 laryngitis.  I want you to know you're not going to skip

15 something like that by me.  This guy may be from Arkansas.

16 He's got as much right to justice in this courtroom as the big

17 law firm in San Francisco.

18         **MR. WOO:**  I totally understand.  It slipped my mind

19 about Aliexpress, but that was in our papers, front and center.

20 We addressed it head on, your Honor.  And there's no offer to

21 sell --

22         **THE COURT:**  All right.

23         **MR. WOO:**  -- when it's not our posting.

24         **THE COURT:**  Thank you.  It's under submission.

25         (At 2:26 p.m. the proceedings were adjourned)

## **CERTIFICATE OF REPORTER**

I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C.10-04457 WHA, Alibaba.com Hong Kong Limited, et al., v. P.S. Products, Inc., et al., were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Friday, May 11, 2012