IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALIBABA.COM HONG KONG LTD, and
ALIBABA.COM, INC.,

    Plaintiffs,

v.

P.S. PRODUCTS, INC., and
BILLY PENNINGTON,

    Defendants.
    /

AND RELATED COUNTERCLAIMS
    /

No. C 10-04457 WHA

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this declaratory-relief action involving design patents covering stun guns, plaintiffs move for summary judgment of non-infringement. For the reasons stated below, the motion is **DENIED**.

## STATEMENT

In August 2010 defendants, P.S. Products, Inc., and Billy Pennington filed suit against plaintiffs Alibaba.com, Inc., and Alibaba.com Hong Kong LTD, in the Eastern District of Arkansas for direct and indirect patent infringement. The case was dismissed for lack of personal jurisdiction over Alibaba in Arkansas. Shortly thereafter, Alibaba filed this instant declaratory action for non-infringement.

Case 3:10-cv-04457-WHA   Document 77   Filed 05/11/12   Page 2 of 6

1    P.S. Products was (and is) a twelve-person company in Little Rock, Arkansas that sold
2 self-defense supplies. The company's owner, Billy Pennington, was the named inventor and
3 owner of the design patents asserted in this action, U.S. Patent Nos. D561,294 S, D576,246 S,
4 and D611,115 S. The patents claimed designs of stun guns. For example, the '294S patent
5 covered a stun-gun brass knuckle.

Figure 6 in '294S Patent



17    Alibaba operated and promoted websites (www.alibaba.com and www.aliexpress.com)
18 that provided an online market for sellers and buyers. Sellers posted images and information
19 about the products that they wished to sell and paid Alibaba for listing their products. These
20 third-party sellers were not owned, controlled, or affiliated with Alibaba, and manufactured and
21 stored their own products (Wong Decl. ¶¶ 2–6).
22    The www.alibaba.com website was designed to facilitate business to business sales. It
23 was not a website like Amazon.com where goods could have been purchased on the site. Rather,
24 the site only provided buyers with a mechanism to view sellers' goods and then to contact the
25 sellers to arrange the terms of the sale and delivery of goods outside the website. There was no
26 "shopping cart" or payment facility on the website. Money could not have changed hands as
27 between buyers and sellers (or anyone else) on the site, and Alibaba did not receive the purchase
28 monies. Anyone could have joined the site for free and posted a limited number of listings.
United States District Court
For the Northern District of California
2

Alibaba derived revenues by selling premium memberships whereby users paid an annual fee in exchange for the right to post additional products on the site and have their products displayed more prominently (Wong Decl. ¶¶ 3–6).

The www.aliexpress.com was also designed to facilitate viewing of product listings posted by third-party sellers. Unlike the www.alibaba.com website, the www.aliexpress.com website permitted site users to purchase products listed by third-party sellers using an "escrow" payment service. The escrow payment service allowed the buyer to place the purchase monies in an escrow account which then released the money to the third-party seller upon confirmation that the buyer had received the ordered goods. Alibaba received a commission on the revenue from products actually sold (Wong Decl. ¶¶ 4–6).

Alibaba did not manually pre-screen or inspect the hundreds of thousands of new product listings posted by third parties on the Alibaba websites each day and contended that such manual screening was (and is) impractical (Wong Decl. ¶ 6). Alibaba had the authority to remove the listing of third-party products from its websites and allowed intellectual property owners to submit complaints via email, fax, and mail, if they thought that a listed product was infringing.

In January 2010, Pennington discovered that two allegedly infringing products were listed for sale on Alibaba's website www.alibaba.com. One was produced by third-party Yijia Imports & Export Co., Ltd. The other product was made by Heng Wei Protective Equipment Manufacturing Co., Ltd. Both sellers were foreign companies. There is no evidence that these companies were affiliated with Alibaba in any way other than selling their products on Alibaba's website. A few days after the discovery, Pennington sent Alibaba a letter advising that Alibaba was placing into the stream of commerce stun guns that were covered by his patents. Pennington included copies of his patents in the letter. It is unclear from the record when the allegedly infringing products were taken down.

Afterward, more allegedly infringing products appeared on Alibaba's websites (27 on www.alibaba.com and two on www.aliexpress.com) in the seven months prior to the lawsuit (Pennington Decl. Exhs. H–JJ). None of these 29 new products was sold by the same sellers listed in Pennington's January 2010 notification. Like the previous sellers, there is no evidence

3

that these new sellers had any affiliation with Alibaba other than selling their products on Alibaba's website.

In August 2010, both Pennington and Alibaba attended and had sales booths at a trade show in Las Vegas. Pennington was selling his stun guns at the trade show. Alibaba's booth had computer terminals where people could view the Alibaba websites. Pennington went to Alibaba's booth and viewed some of the allegedly infringing products on the websites using Alibaba's computer terminals (Pennington Decl. ¶¶ 63–66; Marton Decl. Ex. 6 at No. 12; Pennington Dep. at 99–104). It is unclear which products Pennington viewed.

Pennington did not notify Alibaba about the aforementioned 29 allegedly infringing products that appeared on Alibaba's websites between February and August 2010 until filing suit in August 2010. Alibaba took down these listings within two days (Wong Decl. ¶¶ 22–24).

Now, Alibaba moves for summary judgment of non-infringement on all claims of direct and indirect infringement.

**ANALYSIS**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). An issue is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

1.  **DIRECT INFRINGEMENT.**

In order to be liable for direct infringement, an accused infringer must make, use, offer to sell, or sell a product embodying the patented design in the United States, or import such a product into the United States. 35 U.S.C. 271(a).

Determining whether there has been an offer-for-sale in the context of patent law requires the application of traditional contract law principles to the particular case. An offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Linear Technology*

4

*Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1048–50 (Fed. Cir. 2001). There is no controlling decision as to whether an online marketplace, such as Alibaba's websites, can be liable for direct patent infringement. Under an application of traditional contract law, the relevant inquiry is whether a person shopping on Alibaba's websites would have reasonably believed that Alibaba, and not third-party sellers, was the seller with title or possession of a product who could have entered into a contract to transfer title or possession.

There is a factual dispute as to whether a reasonable buyer going on www.aliexpress.com would have believed that Alibaba itself was making an offer to sell the allegedly infringing products. The name of the "supplier" is only in small font. Moreover, "supplier" may be interpreted to mean manufacturer but that Alibaba is owner of the products. The buyer submits a payment to Alibaba, not the "supplier." This order must construe these facts in a light favorable to Pennington. Therefore, the motion for summary judgment of no direct infringement is **DENIED**.

   **2.   INDUCED INFRINGEMENT.**

Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. 271(b). Liability for induced infringement "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). It is not enough to show deliberate indifference to a known risk that a patent exists. If knowledge of *infringement* is not shown, then the patent owner must prove willful blindness, which requires that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 1270. It is insufficient to show that defendant "merely knows of a substantial and unjustified risk of such wrongdoing." *Id.* at 1271.

There is a genuine factual dispute as to whether Alibaba took deliberate actions to avoid learning of infringement. The record shows that Pennington sent Alibaba a notice of infringement in January 2010. It is unclear when Alibaba took down those allegedly infringing items. Construing the facts in a light favorable to Pennington, a reasonable jury could find that

1 Alibaba induced infringement by deliberately maintaining the allegedly infringing item on its
2 website for an unduly long period.

## CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment of non-infringement is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 11, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE